Green, Judge,
delivered the opinion of the court:
The plaintiffs in this case seek to recover $7,161,018.30 with interest from May 3, 1917, or a total of about $16,-000,000, as just compensation for ships owned by them and taken over by the Government during the World War.
It appears from the evidence that oh April 5, 1917, the plaintiffs acquired by purchase seven Austrian ships which had taken refuge in American harbors. About April 7, 1917, the plaintiffs sold these ships to a New York syndicate. The defendant wanted these ships, and negotiations were commenced for their purchase by the Government through Bernard M. Baruch under the direction of President Wilson. On ascertaining that the ships had been sold to the syndicate, Baruch requested the plaintiffs to get the sale to the syndicate rescinded, having previously informed plaintiffs that the President had expressed a desire to obtain the ships at the original cost price. Plaintiffs complied with the request made by Baruch and obtained a rescission of the sale to the syndicate. Thereafter, the negotiations were resumed between Baruch and the plaintiffs and Baruch *197 told them to go to William Denman, Chairman of the Shipping Board, who would close the transaction. Accordingly plaintiffs met Denman and after some preliminary conversations the plaintiffs executed-a bill of sale to the defendant for each of the ships and signed a receipt reciting that they had received $6,778,006.70 in payment for the seven ships and had executed and delivered to the United States bills of sale therefor, the receipt being executed without prejudice to the further payment of $20 per ton for the transfer of the vessels free of restrictions in the trade. At the time of the execution of the bills of sale, there was also executed by Denman, the plaintiffs, and Phelps Brothers & Company, agents, an instrument denominated “Memorandum of Closing” which recited that the price, to be paid for the ships was the sum stated above and that there was a further balance of $20 per ton to be paid by the Government for the removal of restrictions on the ships and certain minor details of the transactions relating to the closing of the registers of the ships, including what was to be done with stores and supplies, repairs, and a payment to the original owners of the ships. (See Finding 6.) Shortly thereafter defendant paid the further sum of $1,058,020 for the removal of the “restrictions” on the ships and has paid nothing since except $550,000 as an award which will be considered further on.
So far we have recited matters as to which there is no dispute. The plaintiffs allege in their petition that they transferred title to the ships to the United States with the distinct understanding that part of the compensation to be paid them for the transfer was the operation of the ships by them at the prevailing rate of commission, which was 5 per cent of the gross freight receipts, that the United States has denied that the operation of the ships by the plaintiffs was a part of the compensation, and took and used the ships without the plaintiffs ever having received just compensation therefor.
The defendant enters a general traverse of the allegations of the petition and in argument contends that there was no other consideration for the sale of the ships than the price paid therefor; also in substance that the plain *198 tiffs bad no reason to understand or believe that they were to have the operation of the ships after they were sold; and finally, as a matter of law,, it is argued that the written instruments signed and delivered by plaintiffs at the time the ships were purchased constitute the sole and only contracts between the plaintiffs and the defendant for the pui’-chase of the ships and can not be varied by oral testimony as to any understanding on the part of plaintiffs.
More specifically stated, the contention of the plaintiffs is that the negotiations for the sale of the ships resulted in a “mutual misunderstanding” as to the consideration for the sale, and that by reason of this “mutual misunderstanding” the minds of the parties did not meet and no valid contract was made.
The respective counsel do not agree as to what took place in the course of these negotiations and a large portion of the briefs filed in the case is devoted to a review of the testimony introduced. There is no substantial disagreement as to what was said between Baruch and the plaintiffs, but there is a direct conflict in the evidence as to what occurred when plaintiffs a.nd their attorney took up further negotiations with Denman. Plaintiffs have the support ox the greater number of witnesses but the surrounding circumstances tend strongly to support the testimony of Den-man. We do not think it is necessary to determine this conflict by making a finding of fact as to the understanding of either plaintiffs or defendant’s agent, for under our view of the law applicable to the case the testimony introduced on the part of the plaintiffs .is inadmissible to vary or nullify what we hold is a written contract, the terms of which are not in dispute.
The term “mutual misunderstanding” seems to involve a contradiction. We have found no opinion, decision, or textbook in which the expression is used. There are many cases where a mutual mistake occurred with reference to some element of the contract upon which the parties sought an agreement. If both parties had a mistaken belief as to some fact which was a necessary element of the contract, the mistake was thereby mutual. In such event, it is obvious that the minds of the parties never met and there *199 was no contract. But in tbe instant case the allegation that there was a “mutual misunderstanding” is based upon the claim that the evidence shows that one party believed or understood that the contract included a certain matter while the other party did not so understand or believe. We think such an understanding or belief is not mutual and merely shows that the parties disagree as to the terms of the contract. If the theory expressed in the argument of plaintiffs is correct, then whenever there was a disagreement between the parties as to whether a contract had been made, or as to the terms of a contract, and the parties each had a different thought or belief concerning these matters there would be a “mutual misunderstanding” which would invalidate the contract; but this situation nearly always occurs when there is a conflict as to the terms or construction of a contract. Such a rule would make written contracts of little avail. In our view, a misunderstanding as to the contract does not differ essentially from a mistake in relation to it and must be governed by the same principles, that is, it must be mutual in the sense we have used the word above in order to nullify an otherwise valid contract.
It should be said at this stage of the consideration that it is contended on behalf of plaintiffs that there was no complete and definite written contract, but we think a reading of the instrument headed “Memorandum of Closing” makes it so clear that this document constituted a complete and definite agreement that neither discussion nor argument is needed on this point. This written agreement fixed the price to be paid for the ships in plain and unambiguous terms — in other words, fixed the consideration for the sale of the ships; and the oral agreement which plaintiffs claim they understood to have been made is clearly in contradiction with this writing. Taking this fact and conclusion as a basis for further consideration of plaintiffs’ case, it will be found that the decision thereon must be controlled by certain well defined principles.
In determining the issue in the case it will be observed at the outset that plaintiffs do not allege in the petition that a contract was in fact made for the operation of the ships. Indeed they do not even allege that they had reason to *200 believe that there was such a contract from what was said in the negotiations. Nor is it now argued or claimed that the testimony shows that a contract for the operation of the ships was entered into. If such a contract were shown, the plaintiffs would then have merely an action for the recovery of indefinite prospective and contingent profits, which can not be maintained. The plaintiffs’ action is somewhat peculiar in this respect (and we think it will appear also in other respects) in that they base their right to recover not on the actual making of a contract, but merely on their alleged misunderstanding of it accompanied, as they claim, by a different understanding by the other party. The petition seems to be carefully drawn to avoid this dilemma, and in argument counsel for plaintiffs make no contention that any oral contract for the operation of the ships was agreed to by defendant.
It should also be observed in this connection that there being no oral contract made for the operation of the ships, the defendant’s agents did not in fact misunderstand the contract between the parties and the defendant does not allege or assert any understanding or misunderstanding. The defendant’s counsel simply deny that any oral contract was made and pointing to the written contract insist that it is the only contract and all of the contract which defendant made. If the plaintiffs in the negotiations gave defendant’s agents to understand that their proposition of sale included the operation of the ships and defendant’s agents either accepted this proposition or used language giving the plaintiffs reasonable ground to understand it was accepted, then the oral contract was made, but this is not the case before us as presented by either party. What we have here is a written contract in connection with which plaintiffs allege they understood there was an oral agreement. Defendant denies the existence of such an agreement and plaintiffs make no claim that it was made but contend that the minds of the parties have not met and the written contract becomes invalid. If a written contract can be vitiated in this manner, then all that is necessary to be done in order to break a contract in writing is for one party to claim and testify that he understood that there was an additional oral *201 contract upon which the written .contract depended. ■ -Then, when the other party rests its case on the written contract, a “mutual misunderstanding” can be pleaded and the written contract held invalid although it is perfectly plain and unambiguous in its language.
A separate oral agreement may be part of the consideration or inducement for a written contract. We so held in McCloskey v. United States, 66 C. Cls. 105, but in that case the preliminary oral contract did not conflict with the written contract which the parties had entered into and the. clear implication of the case is that the oral contract could not stand if it had varied the terms of the written agreement. There is nothing in the decision to indicate that if .the plaintiffs had merely thought the oral contract was made when it was not in fact made, this situation would have any effect upon the written contract. There would be nothing left of the doctrine that written agreements can not be varied by oral testimony and that all previous negotiations are presumed to be merged therein if, when a written contract was executed, it were held .that it should be set aside merely because one party understood or believed that there was a further oral contract forming part of the consideration of the written contract or preliminary thereto.
The rule for which plaintiffs contend is in effect that when a written contract is entered into and nothing else is agreed, but one party believes that there was an oral contract preliminary to the written contract, this fact, if proved, invalidates the written contract. With this doctrine we can not agree and we find no authorities that sustain it.
None of the decisions which are cited by counsel for plaintiffs support the contentions made as to the principle which must control. They were made upon different facts as to which a different rule applies. It is not necessary to review all of them but there are two upon which the plaintiffs specially rely. The case of Turner & Otis v. Webster, 24 Kan. 38, relied upon largely by plaintiffs, merely lays down the rule that when the agreement is made by parole and ambiguous language is used which the parties understand differently no binding contract has been made. In *202 Vickery v. Ritchie, 202 Mass. 247, there was a mutual mistake which invalidated the contract and the court held that this failure of the express contract did not prevent the application of an implied contract to pay for property furnished and used. In the case we have before us there unquestionably was a written contract made as to which there was no misunderstanding. The question is whether the understanding or belief on the part of plaintiffs (if proved) that there was an additional oral contract made, vitiates the written contract and leaves the parties with no contract at all. We are clear that such is not the rule.
Finally the argument made on behalf of plaintiffs lays special stress upon a statement found in Section 71 of the Restatement of the Law of Contracts. It is as follows:
(a) If the manifestations of intention of either party are uncertain or ambiguous, and he has no reason to know that they may bear a different meaning to the other party from that which he himself attaches to them, his manifestations are operative in the formation of a contract only in the event that the other party attaches to them the same meaning.
If this statement is considered in connection with what precedes and the plain meaning of its language applied, it will be seen that it has nothing to do with any situation in the case before us. It is made under the following heading:
UNDISCLOSED UNDERSTANDING OE OFFEROR OR OFFEREE, when material
Except as stated in §§ 55, 70, the undisclosed understanding of either party of the meaning of his own words and other acts, or of the other party’s words and other acts, is material in the formation of contracts in the following cases and in no others: [Statement (a) set out above then follows.]
From this heading it will be seen that the subject matter being considered was when the undisclosed understanding of one party was material in the formation of a contract. Here it is contended that an undisclosed understanding will destroy a written contract. Moreover, the preliminary facts *203 stated in paragraph (a) set out above are not claimed to exist in the instant case by either party.
Having reached the conclusions as to the law in the case which have been stated above, it follows that the testimony upon which the plaintiffs rely to void the written contract is inadmissible for that purpose, and consequently, as stated above, we do not find it necessary to determine and set out in the findings what either plaintiffs or defendant understood.
What we have said above is sufficient to dispose of the case but it may be that something should be added with reference to the claim presented to the Secretary of War by plaintiffs against the defendant for $7,500,000. This claim was made under what is called the Dent Act and set up the same matters that are now made the basis of plaintiffs’ suit; namely, the failure of the defendant to turn the ships over to plaintiffs, and that at the time of the transfer of the ships there was no meeting of the minds between the pai’ties to the contract and therefore plaintiffs were entitled to receive the fair market value thereof less what had been paid. The War Claims Board denied relief but on July 16, 1921, the claim having been presented to the Secretary of War, John W. Weeks, he made an award in favor of the plaintiffs in the sum of $550,000. The award recited that it was made in “full adjustment, payment, and discharge of said claim, exclusive of prospective profits.” The plaintiffs, as in the present case, had made no claim for prospective profits and the Dent Act- forbade an award for such profits. The plaintiffs signed an acceptance of the award and the $550,000 was paid to them. Testimony was offered with reference to statements afterwards made by Secretary Weeks, who was not living at the time the testimony was introduced. This testimony can not be received to vary the award and the acceptance for several reasons, but it is argued any finality the award may have had has been destroyed by the special jurisdictional act. We think the closing provision of the act plainly contemplates that the court shall determine whether the claim of plaintiffs was “satisfied by the subsequent payment by the Secretary of War as an accord and satisfaction.” That it was satisfied, *204 we hare no doubt. Attention is called to the fact that the award excluded prospective profits and there is much discussion as to the authority of the Secretary of War under the Dent Act and speculation as to what was the basis of the award he made. It is not necessary to consider any of these matters. The plaintiffs presented to the defendant through the Secretary of War a claim in substance and effect the same as that which they now make and upon which they seek to recover judgment. The plaintiffs were paid and accepted a certain sum in full payment and discharge of their claim. We think it is entirely immaterial what the Secretary of War had in mind when he made the award and that any irregularity in the proceedings, if there was any, does not change the result that the plaintiffs’ claim was satisfied.
The defendant sets up as an additional defense a claim that the evidence shows that plaintiffs were paid all the ships were fairly worth in the market at that time. The conclusions we have stated above make it unnecessary to determine this question of fact. In this connection the defendant offered evidence which it is claimed showed that the plaintiffs were given the operation of other ships from which they derived a large profit. We think this evidence was properly excluded by the commissioner of this court and in any event it is not necessary that we should determine any question arising thereon. The evidence, however, does show that the defendant paid the plaintiffs the original cost of the ships to them with a very liberal allowance for expenses and the plaintiffs also received from Phelps Bros. & Co., out of what the Government paid for- removing the restrictions on the ships, $188,000. In other words, it appears that the plaintiffs realized a profit out of the transaction of $738,000. The amount of this profit is not material to the decision of the case and we only mention it because in the oral argument some claim was made that the plaintiffs had not been treated fairly by the Government. The defendant contends that the plaintiffs originally contemplated a patriotic sacrifice of profits in accordance with the desire of the President but afterwards changed their *205 minds and that this was the only misunderstanding in the case. But this also is not material to our decision.
It follows from what has been stated above that the plaintiffs’ petition must be dismissed and it is so ordered.
Whaley, Judge; Williams, Judge\ Littleton, Judge; and Booth, Chief Justice, concur.