The NARVA HARRIS CONSTRUCTION CORPORATION

v.

The UNITED STATES.

Nos. 407-76 and 422-76.

United States Court of Claims.

April 19, 1978.

Charles B. Burr, II, Philadelphia, Pa., attorney of record for plaintiff; Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., of counsel.

Alan L. Ferber, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before DAVIS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This consolidated case comes before the court on defendant's second motion for summary judgment and plaintiff's opposition thereto. Plaintiff has petitioned this court for damages resulting from an alleged breach of contract by the Department of Housing and Urban Development (HUD).[1] Defendant first moved for sum-

---

1. Plaintiff's petitions (styled "complaint") are photocopies of the complaints which it original-ly filed in the Pennsylvania Court of Common Pleas and contain three separate Counts.

mary judgment on grounds that plaintiff's petitions failed to state a claim on which relief could be granted and that, even if HUD officials did purport to make the agreements alleged by plaintiff, they were acting beyond the scope of their legal authority. This court, by its order of September 30, 1977, denied defendant's motion, noting that defendant had failed to show that there existed no triable issues of material fact. We also noted, however, that 31 U.S.C. § 200(a)(1) (1970),[2] which may prevent enforcement of oral contracts against the Government, might provide a "short and conclusive answer to the petitions here" and render a trial unnecessary. Defendant has now, predictably, moved again for summary judgment, citing 31 U.S.C. § 200(a)(1). After a careful analysis of the arguments concerning § 200 put forward by both the defendant and the plaintiff in opposition, we conclude that plaintiff may have a claim against the Government which is not precluded by § 200 and that a trial is, therefore, necessary.

Giving, as we must for purposes of withstanding this motion for summary judgment, full credence to plaintiff's allegations, the following scenario unfolds. In 1971, plaintiff entered into negotiations with Central Post Housing, Inc., the Presbyterian-University of Pennsylvania Medical Center, and representatives of the Philadelphia Regional Office of HUD (defendant here)[3] to provide the services of general contractor for the development of the Center Post Housing Project.[4] By September of 1971, before any written contracts were executed, plaintiff advised defendant that a preliminary investigation had demonstrated that the cost figures required by defendant were less than reasonable and necessary to develop and construct the project. Defendant thereupon told plaintiff that the contracts would have to be drafted with the lower figures, to get the project underway, but assured plaintiff that these cost figures would be increased at a later date in accordance with applicable HUD mortgage increase procedures.

Also in 1971, plaintiff entered into negotiations with Adventurers, Inc., the Philadelphia Council for Community Advancement, and the appropriate representatives of HUD for the Philadelphia Region, to serve as general contractor for the remodeling and partial renovation of the Kemble Park Apartments. Similarly, after an initial investigation, plaintiff informed all parties that the remodeling could not be accomplished for the costs required by defendant. Again, to enable the project to proceed, defendant assured plaintiff that the cost figures would be adjusted at a later time in accordance with HUD procedures for increasing mortgage insurance.

In both cases, defendant's commitments were oral only. Relying on these representations, plaintiff proceeded with the two projects, and completed them both, to the

---

Count I alleges a breach of contract, Count II alleges a conspiracy among HUD and numerous defendants, and Count III alleges a "pattern and policy of invidious discrimination against minority contractors." The Trial Judge, in his consolidation order, stayed proceedings involving Counts II or III pending resolution of Count I. Although defendant did not specify Counts nor request a partial summary judgment, it has briefed only the contract point (Count I). We shall, therefore, treat this motion as a motion for partial summary judgment on Count I.

**2.** This section reads, in pertinent part:

. . . [N]o amount shall be recorded as an obligation of the Government of the United States unless it is supported by documentary evidence of—

(1) a binding agreement in writing between the parties thereto, including Government agencies, in a manner and form and for a purpose authorized by law . . . .

31 U.S.C. § 200(a)(1) (1970).

**3.** Center Post Housing, Inc., and the Medical Center were named, along with HUD, as defendants in the original suit in Pennsylvania Common Pleas Court. HUD had the case removed to the Federal District Court for the Eastern District of Pennsylvania; that court dismissed HUD for lack of jurisdiction (contract claim against the Government in excess of $10,000) and transferred that portion of the suit involving HUD to the Court of Claims. The same procedure was followed, with different parties, in the Kemble Park suit.

**4.** This statement of the facts is taken from the September 30, 1977 order of this court.

satisfaction of all the parties. The mortgage insurance was not raised, and costs were not adjusted to reflect the true costs of construction in either project. On the Center Housing project, plaintiff claims that a balance of $226,313.10 is owing; on the Kemble Park Apartments, plaintiff claims $140,574.37 is owed.

Defendant now moves for summary judgment on the ground that 31 U.S.C. § 200 precludes recovery by the plaintiff on the basis of an alleged oral contract. Citing *United States v. American Renaissance Lines*, 161 U.S.App.D.C. 140, 494 F.2d 1059, *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974), the leading case interpreting 31 U.S.C. § 200, defendant argues that a clear, written contract is required to bind the parties, where one of the parties is the Government. It seeks to bolster this assertion by submitting affidavits of Philadelphia Region HUD officials stating that HUD regulations did not allow the oral agreements alleged by plaintiff.

Defendant goes even further to argue that § 200 also precludes this court from finding an implied-in-fact contract or from awarding damages in *quantum meruit* based on the same nucleus of operative facts. It argues that finding an implied-in-fact contract or awarding *quantum meruit* damages would be the same as determining that § 200 did not apply at all, and further asserts that a *quantum meruit* recovery requires performance, which plaintiff here has not undertaken, beyond that which is already contractually obligated. Finally, the Government contends that this court does not have jurisdiction over pure *quantum meruit* claims because they spring from contracts implied-in-law.

Plaintiff's rejoinder centers on the argument that it was not Congress' intent, in passing § 200, "to allow the Government to repudiate at will contracts which by custom of trade are oral."

Plaintiff also asserts, however, that even if § 200 should be interpreted so as to apply to the alleged express oral contract, it should not be so broadly construed as to preclude any kind of a recovery by plaintiff. Plaintiff raises *quantum meruit* and implied-in-fact contract as two alternate theories under which it should be allowed to recover, both of which would require a trial. Plaintiff argues that, even though our previous order characterized this agreement as "actually more in the nature of an express contract not reduced to writing," additional facts (in addition to the express oral agreement negated by § 200) make a "meeting of the minds" a reasonable inference. And, where such an inference is possible, a contract implied-in-fact may exist. *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1255–56, 192 Ct.Cl. 649, 673–74 (1970).

Because we see a valid distinction to be drawn between the naked, express oral contract at which § 200 may be directed, and the "additional facts" from which a contract implied-in-fact could be inferred, we agree with the plaintiff that a trial is necessary to determine whether such additional facts can be proved in the face of Government opposition.[5]

We do not now decide whether the Government's interpretation of § 200 with regard to the express oral contract is correct. A stark assertion by an individual that a Government representative had orally promised some performance might, without more, be insufficient to bind the Government. Likewise, a stark assertion by the Government that some other person had orally promised performance might, without more, be insufficient to bind that other person to perform. *See American Renaissance Lines*, 161 U.S.App.D.C. at 143, 494 F.2d at 1062–68.

We have great difficulty, however, in accepting the Government's further assertion that a reasonable interpretation of § 200 must, of necessity, preclude recovery through implied-in-fact contract or *quantum meruit* when such recovery would be based on the same basic operative facts. Were we to subscribe to such an argument,

---

5. Both the Trial Judge, in his consolidation order of January 25, 1977, and this court, in its previous order, recognized the existence of triable issues of material fact.

we would be facing the farcical situation of having the Government, in any situation where it was defending against an implied-in-fact contract claim, attempting to prove that there was, in actuality, an express oral contract which it had breached. Then, citing § 200 and applicable regulations, the Government could escape any liability whatsoever. *Cf. American Renaissance Lines*, 161 U.S.App.D.C. at 144, 494 F.2d at 1063 (similar result dismissed as unsatisfactory in context of mutuality).

Even more importantly, such an interpretation would also, in practicality, have the effect of eliminating recovery against the Government in almost all cases where claims are based on implied-in-fact contract or *quantum meruit*. In almost all such cases, there is some sort of oral representation on the part of some Government agent. Although the party seeking to recover from the Government may not rely on the oral representation, and may rely totally on other, independent facts to establish the presence of an implied-in-fact contract or to recover in *quantum meruit*, the Government now seeks to make the mere existence of the oral representation, characterized as an oral express contract not reduced to writing, sufficient to compel this court to close its eyes to all other surrounding facts. Clearly such an expansive interpretation of § 200 is unacceptable.

The Supreme Court, in discussing a statutory predecessor to § 200, recognized the possibility of recovery outside of the oral express contract which had not been reduced to writing. In *Clark v. United States*, 10 Ct.Cl. 604 (1874), *rev'd*, 95 U.S. 539, 24 L.Ed. 518 (1877), the Court of Claims had taken exactly the position which the Government now asserts and had denied recovery to a claimant against the Government on an oral contract. The Supreme Court, though recognizing that application of the statute was mandatory insofar as it precluded recovery based solely on an alleged express oral contract, reversed this court and allowed recovery on "an implied contract for a *quantum meruit*."

█ Since that early interpretation (and since the statute now in issue became effective in 1954) this court has often allowed recovery on an implied-in-fact contract, *see, e. g.*, *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 192 Ct.Cl. 649 (1970). The failure, for whatever reason, of an attempt at an express contract, be it written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the court to infer the "meeting of the minds" necessary to separate an implied-in-fact from a pure implied-in-law contract.[6] *New York Mail and Newspaper Transportation Co. v. United States*, 154 F.Supp. 271, 278, 139 Ct.Cl. 751, 759, *cert. denied*, 355 U.S. 904, 78 S.Ct. 332, 2 L.Ed.2d 260 (1957).[7]

6. "Where a contract may be implied from the facts, this court has jurisdiction; where a contract must be imposed by law, it does not." *Algonac*, 428 F.2d at 1256, 192 Ct.Cl. at 674. The distinction between contracts implied-in-fact and those implied-in-law is clearly spelled out in *Algonac*.

> * * * Thus a contract *implied in fact* is a true contract, the agreement of the parties being inferred from the circumstances, while a contract implied in law is but a duty imposed by law and treated as a contract for the purposes of a remedy only. Another distinction * * * lies in the fact that, * * * in the case of contracts implied in fact, there must be an assent of the parties, as in express contracts, whereas * * * in the case of contracts implied in law, or, more properly, quasi or constructive contracts, such element of assent is lacking. The distinction has also been stated that a contract

> implied in fact is an implied contract in which the intention is ascertained and enforced, while a contract implied in law is a mere fiction, the intention being disregarded, and the quasi contractual obligation being imposed by law to bring about justice, without regard to the intention of the parties.
> * * *

428 F.2d at 1255–56, 192 Ct.Cl. at 674, *quoting* 17 C.J.S. *Contracts* § 4 (1963).

7. This court has discussed the possible applicability of 31 U.S.C. § 200 in two recent opinions. *Grismac Corp. v. United States*, 556 F.2d 494, 214 Ct.Cl. 39 (1977); *Primary Metal & Mineral Corp. v. United States*, 556 F.2d 507, 214 Ct.Cl. 90 (1977). In each of these cases, this court had extensive findings of fact, evolved by a Trial Judge after thorough trial proceedings, from which we could conclude that no contract (implied-in-fact or otherwise) existed. Thus, we were never called upon to decide the ques-

512

It appears from the record now before us—which must be interpreted in a light most favorable to the plaintiff for purposes of withstanding defendant's motion for summary judgment—that plaintiff may be able to prove facts, in addition to the alleged express oral contract, from which a contract may be inferred. If such be the case, the statutorily mandated preclusion of recovery on an oral contract (which we assume *arguendo*, without deciding) will not totally bar plaintiff's recovery in this action.

Accordingly, after a thorough consideration of the briefs and submissions of the parties without oral argument, the defendant's motion, treated as a motion for partial summary judgment is denied and this action is remanded to the Trial Division for further proceedings.

tion addressed in the case at hand, whether, as a matter of law, 31 U.S.C. § 200 automatically precluded recovery on an implied-in-fact contract arising from the same nucleus of operative facts as an express oral contract.