**DYNALECTRON CORP., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 635–82C.

United States Claims Court.

Feb. 16, 1984.

Christopher J. White, McLean, Va., for plaintiff.

Colvin W. Grannum, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MAYER, Judge.

Plaintiff Dynalectron Corporation is an unsuccessful bidder for a government contract. It claims entitlement to its bid prep-

aration costs because the procurement was tainted by the bias of a procurement official and by the appearance of impropriety. Defendant says plaintiff has not established its proposal was not fairly and honestly considered or that the award of the contract resulted from wrongful government actions. The case is before the court on plaintiff's motion for partial summary judgment and defendant's cross motion.

### FACTS

On August 13, 1979, the Federal Railroad Administration (FRA) issued a request for proposals (RFP) to operate and maintain the FRA Transportation Test Center in Pueblo, Colorado, which stated that the offeror whose technical/cost relationship was most advantageous to the government would receive the contract. The same day, an employee of plaintiff, the incumbent contractor, was told by the FRA Manager for Safety, Quality Assurance, and Emergency Services (Manager) that he "would help Kentron [a competitor] in obtaining the upcoming contract away from Dynalectron" and "do everything in his power to help Dynalectron lose." * The FRA, however, received no proposal from Kentron. The only proposals for this competitive negotiated procurement were from Boeing Services International, Inc. (Boeing), Lockheed Corporation (Lockheed), Federal Electric Corporation (FEECO), and plaintiff. All four were reviewed by a technical evaluation team (TET) appointed by the FRA.

The scores assigned to each proposal by the TET were forwarded to a source evaluation board (SEB) which determined that all four proposals were within the competitive range. Negotiations were held with all of the offerors and, in May of 1980, each submitted a final cost and technical proposal for review by cost and technical evaluation teams. One member of the original TET, who became seriously ill, was replaced with the Manager because he was the only

---

\* The Manager denies saying this, but for purposes of the motions for summary judgment the court assumes he did. *News Publishing*

*Co. v. United States,* 218 Ct.Cl. 712, 714 (1978); *Narva Harris Construction Corp. v. United States,* 574 F.2d 508, 512, 216 Ct.Cl. 238 (1978).

person available with the necessary expertise.

The cost and technical evaluation teams each submitted a report to the SEB. The cost evaluation team ranked plaintiff's cost plus fixed fee proposal next to last because its adjusted cost was exceeded only by Lockheed's. The TET scores showed Lockheed first, Boeing second, plaintiff third, and FEECO last. The point spread between Lockheed and Boeing was 9; the difference between Boeing and plaintiff was less than 4 points. When the Manager's scores are removed, the difference between Boeing's and Dynalectron's score is only .48 of a point, but the relative ranking of the offerors remains the same. If the scores of either of two other members are removed, the ranking also remains the same. Removal of the score of the remaining evaluator, however, would make plaintiff last.

The reports submitted by the cost and technical teams did not purport to recommend who should receive the award, but were used by the SEB in making its determination. The SEB, no members of which had been members of the TET, performed its own analysis of the proposals and prepared its own technical summary charts based on "significant discriminators" used only by the SEB. It found that the final offers of Lockheed and Boeing were of significantly higher technical quality than those of plaintiff and FEECO. While Lockheed's final weighted technical score exceeded Boeing's by nine points, the SEB determined that the proposals were technically equal. Detailed charts comparing the costs of each proposal were also prepared and its final report was sent to the source selection official (SSO) who made the decision to award Boeing the contract.

Plaintiff filed a protest with the General Accounting Office (GAO) and a motion for a preliminary injunction in the United States District Court for the District of Columbia, alleging a series of deficiencies in the procurement process and challenging both the cost and technical evaluations. In September of 1980, the district court denied plaintiff's motion for a preliminary injunction and stayed the proceedings pending the GAO ruling. Ten months later, the Comptroller General denied plaintiff's protest in its entirety. Comp.Gen.Dec. B–199741 (July 31, 1981), 81–2 C.P.D. ¶ 70. Shortly thereafter, defendant moved for summary judgment in the district court, relying largely on the GAO decision.

In its March 1982 memorandum and order on the motion for summary judgment, the district court agreed with the Comptroller General and defendant on all but one of the contentions. *Dynalectron Corp. v. U.S. Department of Transportation,* No. 80–2088, slip op. at 9 (D.D.C. Mar. 19, 1982). Contrary to plaintiff's allegations of arbitrary and capricious actions by procurement officials, the court found no denial of meaningful pre-award discussions guaranteed by regulations covering competitive negotiations; the procurement officials did not materially deviate from criteria and rating methodology discussed in the RFP; the procurement officials' actions in the technical point scoring area, cost evaluation and weighing, and cost realism analysis were rational; and plaintiff's procedural claims had no merit. *Id.* at 5–6. Because of the dispute over whether the Manager had expressed bias toward plaintiff, however, the court deferred ruling on the motion for summary judgment and permitted plaintiff to conduct discovery on that issue.

Plaintiff conducted substantial discovery, but in September of 1982 defendant advised the court that the request for injunctive relief was moot because FRA was terminating the disputed contract with Boeing. On plaintiff's motion, the court then transferred the case to the United States Claims Court pursuant to 28 U.S.C. § 1631, and denied all pending motions as moot. In this court, plaintiff raises substantially the same issues as were before the district court, but also seeks bid preparation costs.

## DISCUSSION

Plaintiff argues that it is entitled to recover its bid preparation costs because the Manager who served as a member of the

TET violated a departmental regulation governing employee behavior. 49 C.F.R. § 99.735–7(a) and (b).** It asserts that "regulations, like statutes, have the force and effect of law and violation thereof justifies recovery." This, however, misconstrues the authority of the court.

■ Like its predecessor, the United States Court of Claims, this court's jurisdiction is limited. Its authority to grant relief is dependent on congressional assent to entertain a claim against the United States. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). The court may render judgment on a claim against the United States premised on an act of Congress or a regulation of an executive department, 28 U.S.C. § 1491 (Supp. V 1981), *as amended by* Federal Courts Improvement Act of 1982, Pub.L. No. 97–164 § 133(a), 96 Stat. 25, 39, when the statute or regulation "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *See United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954, *quoting Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 1009, 178 Ct.Cl. 599 (1967). The court, therefore, has no jurisdiction in a disappointed bidder suit to redress violations of a regulation like this one because it does not embrace the right to compensation. *See Eagle Construction Corp. v. United States,* 4 Cl.Ct. 470, 476 (1984); *Cecile Industries v. United States,* 2 Cl.Ct. 690, 693 (1983). This is not to say a party may not suffer injury, "economic or otherwise," by violation of a regulation or statute, *see Data Processing Service v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), thereby giving it standing, *see generally Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), only that this court has no jurisdiction to grant relief on that basis. *See Cecile Industries v. United States,* 2 Cl.Ct. at 694; *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. 43, 45 (1982); *but c.f. Planning Research Corp. v. United States,* 4 Cl.Ct. 283, 291–92 (1983).

■ In this court, a plaintiff in a typical procurement action must base its claim on an express or implied contract. *See CACI, Inc.—Federal v. United States,* 719 F.2d 1567, 1573 (Fed.Cir.1983); *Indian Wells Valley Metal Trades Council v. United States,* 1 Cl.Ct. at 45. In the case of a disappointed bidder, there is no express contract, *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *Heyer Products Co. v. United States,* 140 F.Supp. 409, 412 (Ct.Cl.1956); the court's jurisidction is premised on an implied contract. *United States v. John C. Grimberg Co.,* 702 F.2d at 1367; *Tidewater Management Services, Inc. v. United States,* 573 F.2d 65, 67 (Ct.Cl.1978). It is an implied term of every request for proposals issued by the government that each response submitted in accordance with the request will be fairly and honestly considered. *Yachts America, Inc. v. United States,* 3 Cl.Ct. 447, 449 (1983); *Morgan Business Associates, Inc. v. United States,* 619 F.2d 892, 895 (Ct.Cl.1980); *Heyer Products Co. v. United States,* 140 F.Supp. at 412. If an unsuccessful bidder can prove this obligation has been breached because a statute or

---

** This regulation provides:

(a) Each employee shall avoid any action, whether or not specifically prohibited by this part, which might result in or create the appearance of:

(1) Using public office for private gain;

(2) Giving preferential treatment to any person;

(3) Impeding Government efficiency or economy;

(4) Losing complete independence or impartiality;

(5) Making a Government decision outside of official channels or not in accordance with applicable published procedures or statutory requirements; or

(6) Affecting adversely the confidence of the public in the integrity of the Government.

(b) Employees shall not engage in criminal, dishonest, infamous, immoral, or notoriously disgraceful conduct, or any conduct prejudicial to the Government.

regulation was violated or otherwise, it may recover its bid preparation costs from the government. *McCarty Corp. v. United States,* 499 F.2d 633, 637 (Ct.Cl.1979); *Keco Industries, Inc. v. United States,* 492 F.2d 1200, 1203–04 (Ct.Cl.1974). But not every violation of a statute or regulation leads to that result. *Burroughs Corp. v. United States,* 617 F.2d 590, 597, 599 (Ct.Cl.1980); *Tidewater Management Services, Inc. v. United States,* 573 F.2d at 67.

██ The regulation here creates no enforceable rights for a disappointed bidder. *See United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Burroughs Corp. v. United States,* 617 F.2d at 599. Unless plaintiff can show that violation of the regulation is a factor relevant to a determination that a breach of the contractual obligation of fair consideration occurred, it cannot prevail. *See CACI, Inc.—Federal v. United States,* 719 F.2d at 1574; *Keco Industries, Inc. v. United States,* 492 F.2d at 1204. But plaintiff has not satisfied the high standard of proof required. It has presented no "hard facts," *CACI, Inc.—Federal v. United States,* 719 F.2d at 1582; *Eagle Construction Corp. v. United States,* 4 Cl.Ct. at 481 (1984), demonstrating that the violation of a regulation intended as guidance for government employees in the performance of their duties, *see CACI, Inc.—Federal v. United States,* 719 F.2d at 1581, denied it the impartial consideration to which it was entitled.

*Actual Bias*

Plaintiff says the Manager's evaluation of its proposal was biased. Defendant argues that even if the court finds the technical evaluation was affected by the Manager's bias, plaintiff is not entitled to recover because it would not have received the award anyway in view of its inferior cost evaluation. In effect, defendant is challenging plaintiff's standing to seek relief as a disappointed bidder unless it can show that it would have received the contract and was injured by its failure to get it.

This argument was rejected by the Court of Appeals in *CACI, Inc.—Federal v. United States,* 719 F.2d 1567. It held that plaintiff did not have to make a "but for" showing that it would have received the contract, only that it was within the "zone of active consideration." *Id.* at 1575. In our case, plaintiff was one of the bidders determined to be within the competitive range or "zone of active consideration" for this procurement and invited to submit final proposals. It therefore has standing to assert its claim.

██ Under the standards set out in *Keco Industries, Inc. v. United States,* 492 F.2d at 1203, 203 Ct.Cl. at 569, plaintiff must demonstrate that the procurement decision was affected by the alleged bias. *See CACI, Inc.—Federal v. United States,* 719 F.2d at 1580–82; *Eagle Construction Corp. v. United States,* 4 Cl.Ct. at 481. Its burden is a heavy one; it needs "well-neigh irrefragable proof" to overcome the presumption that government employees have acted conscientiously in the performance of their duties. *See Torncello v. United States,* 681 F.2d 756, 770 (Ct.Cl.1982); *Kalvar Corp. v. United States,* 543 F.2d 1298, 1301–02 (Ct.Cl.1976). Notwithstanding the Manager's threats, plaintiff has not shown his evaluation of its proposal was affected. It merely says that removal of his scores from the final TET score brings plaintiff within .48 of Boeing's final score. Plaintiff couples this with a deposition statement by the Manager some two years after the contract was awarded that he recalled plaintiff's as the third best offer. Yet the evidence shows that of the four proposals submitted, he scored plaintiff's lowest.

██ This is not enough. Plaintiff has identified no instance in which the Manager arbitrarily or capriciously overrated another bidder's proposal or underrated plaintiff's. When his scores are removed from the final TET score, as plaintiff urges, it continued to be ranked third behind Boeing and Lockheed. Therefore, it cannot show that this affected the final decision.

In a negotiated procurement, like this one, the SSO or contracting officer is entrusted with a high degree of discretion, *Burroughs Corp. v. United States,* 617 F.2d at 598; *Tidewater Management Services, Inc. v. United States,* 573 F.2d at 73; *see also Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1172 (D.C.Cir.1973), and plaintiff must make a strong showing of abuse. It admits that removal of the Manager's scores eliminates any unfair advantage to other offerors, but argues that if a new member had been substituted it could have gotten a higher score. As plaintiff concedes, however, there was no requirement for a specific number of members on the TET, so one composed of three unbiased members was permissible. Therefore, elimination of the Manager's allegedly biased scores resulted in an unbiased final score.

Perhaps more importantly, plaintiff's proof does not measure up to the task of showing that the decision to award the contract to Boeing was the product of arbitrary or capricious government action. *See Tidewater Management Services, Inc. v. United States,* 573 F.2d at 65; *Continental Business Enterprises, Inc. v. United States,* 452 F.2d 1016, 1021 (Ct.Cl.1971). A three tier procurement structure was used here and plaintiff merely speculates about the impact of the Manager's alleged bias on the TET, where he served. Speculation is not enough to taint that tier; it is even less probative of an improper impact on the SEB, the middle tier, or the SSO who actually made the award decision. Plaintiff simply has not shown that the FRA's evaluation of its proposal was marked by unequal or unfair treatment. Kentron, the company favored by the Manager, did not submit a proposal, and there is no evidence that he favored any of the other bidders or that his bias was conveyed to or shared by others. Plaintiff has not asserted that the SSO or any member of the cost evaulation team or SEB showed favoritism toward another bidder or harbored a pre-conceived notion to ignore the merits of plaintiff's proposal. The allegation that one member of the TET was biased is insufficient to discharge the burden of proof.

*Appearance of Impropriety*

Plaintiff also says the placement on the TET of one who had previously made prejudicial statements against it and was later convicted of theft creates an appearance of impropriety justifying bid preparation costs. To support this proposition, it relies on *CACI, Inc.—Federal v. United States,* 1 Cl.Ct. 352 (1983), which enjoined award of a contract because of the appearance of and opportunity for impropriety. In reversing that decision, however, the Court of Appeals held that the mere appearance of impropriety without a factual showing of wrongdoing would not sustain the action. 719 F.2d at 1581.

Here, as in *CACI,* plaintiff's appearance of impropriety argument is distinct from its allegation of actual prejudice. The argument is not founded on an allegation that the FRA failed to honestly and fairly consider its proposal, but that it was unwise to place the Manager on the TET after he expressed bias toward plaintiff, regardless of whether he actually graded its proposal unfairly or not. It therefore bases its claim on factors independent of the existence of actual prejudice in the procurement process. Plaintiff wants relief because of how it looked, not because of how it was.

■ This argument fails because the court cannot base award of bid preparation costs on "suspicion or innuendo." *CACI, Inc.—Federal v. United States,* 719 F.2d at 1582; *Eagle Construction Corp. v. United States,* 4 Cl.Ct. at 481. Indeed, while an appearance of impropriety may warrant disciplinary action against the offending federal official, in the absence of any impact on the evaluation of a proposal appearances will not sustain an award of bid preparation costs. *CACI, Inc.—Federal v. United States,* 719 F.2d at 1580–82; *Eagle Construction Corp. v. United States,* 4 Cl.Ct. at 481.

*Law of the Case*

Finally, plaintiff asserts that it should recover its proposal costs because of the other allegations of arbitrary and capricious action by the procurement officials it raised in the district court. Defendant argues that "the spirit of collateral estoppel" prevents plaintiff from relitigating issues which were decided in the district court. Plaintiff correctly notes, however, that because there was no final judgment in that court, there can be no estoppel. *Smith v. United States,* 654 F.2d 50, 54 (Ct.Cl.1981); *see also Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947).

 Nevertheless, the rulings of the district court are the law of this case. Once an issue in a case has been decided by a court that decision will normally be conclusive. *See International Electronics Corp. v. United States,* 2 Cl.Ct. 570, 574 (1983), aff'd, mem., 727 F.2d 1120 (Fed.Cir.1983). The interim rulings which were intended to be dispositive are entitled to finality unless the controlling law has changed, new facts come to light, or the rulings are plainly wrong and adherence to them would be unjust. *See Northern Helex Co. v. United States,* 634 F.2d 557, 561 (Ct.Cl.1980); *see generally* 18 Wright & Miller, *Federal Practice and Procedure* § 4478 (1981). None of this has been suggested by plaintiff.

 It does not matter that plaintiff sought equitable relief in the district court and seeks legal relief here. The underlying transactions and bases for relief are the same, and this is but a continuation of the case in that court. *See* Federal Courts Improvement Act of 1982, Pub.L. No. 97–164 § 301, 96 Stat. 55 (to be codified at 28 U.S.C. § 1631); *see also Rothman v. United States,* 219 Ct.Cl. 595, 596 (1979). The rulings did not come on a request for temporary or preliminary extraordinary relief, which might not trigger the law of the case doctrine, *see Board of Trade v. Commodity Futures Trading Commission,* 605 F.2d 1016, 1020 (7th Cir.1979); *Berrigan v. Sigler,* 499 F.2d 514, 518 (D.C.Cir.1974), but on defendant's motion for summary judgment almost 19 months after a preliminary injunction had been denied. Plaintiff had a full and fair opportunity to litigate the issues. The purposes of the law of the case doctrine to conserve judicial resources and foster finality would not be served if plaintiff were allowed to relitigate what has already been decided. *Northern Helex Co. v. United States,* 634 F.2d at 562; *United States v. Turtle Mountain Band of Chippewa Indians,* 612 F.2d 517, 521 (Ct.Cl.1979).

The district court deferred ruling on defendant's motion for summary judgment to allow plaintiff to conduct discovery on the bias issue. But this is no longer an impediment to summary judgment. *See Brubaker v. Board of Education,* 502 F.2d 973, 990 n. 5 (7th Cir.1974); *see also Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1978). Plaintiff has filed its own motion for partial summary judgment on the government's liability, asserting that there are now no questions of material fact to prevent a ruling on the motions. The court agrees.

## CONCLUSION

Accordingly, plaintiff's motion for partial summary judgment is denied and defendant's cross-motion for summary judgment is granted. The case will be dismissed with costs to the prevailing party. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so ORDERED.