SPACE AGE ENGINEERING,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 577–82C.

United States Claims Court.

March 26, 1984.

David R. Flyer, Burbank, Cal., for plaintiff. Mel Teitelbaum, Los Angeles, of counsel.

R. Anthony McCann, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

This case is before the court on cross-motions for summary judgment to determine if plaintiff Space Age Engineering, Inc. (Space Age), should be awarded its bid preparation expenses because of defendant's breach of its duty to fairly and honestly consider its bid.

## FACTS

For six years, Lieutenant Colonel Richard Caldwell served as Director of Supply at Sharp Army Depot (SHAD) in California, whose primary mission is to supply eight western states and the Pacific Theater with secondary items and repair parts. After a tour of duty overseas, Caldwell was reassigned to SHAD in 1975 as Executive Officer and Deputy Installation Commander. In this position, he was senior to approximately 1500 people in the SHAD organizational structure, including the Deputy Director for Supply (Deputy Director). However, during this tour he was never the immediate or second line supervisor of the Deputy Director, and any contact they had was work related.

In early 1979, six months before Caldwell retired from active duty, a review of the consolidation and containerization operation (CCP operation) at SHAD pursuant to Office of Management and Budget Circular A–76 was initiated. The purpose was to determine whether it would be more cost effective to have the government or a private contractor perform this work. Several of the A–76 review meetings were chaired by Caldwell in his administrative role of ensuring scheduled deadlines were met. He did not participate in development of the statement of work which was the responsibility of the Deputy Director. When Caldwell retired in July of 1979, the statement

of work was not finalized, and no cost analysis or in-house bid had been prepared.

In January of 1980, six months after Caldwell's retirement, an invitation for bids was issued. All bids received in response to the invitation were reviewed under OMB Circular A–76 and the contract was awarded to plaintiff Space Age in June of 1980. For fiscal year 1982, the government exercised its option to extend plaintiff's contract for an additional year. Because of significant changes in the scope of the work, however, it was determined to be in the best interests of the government to issue a new solicitation for its 1983 fiscal year requirements. A request for proposals incorporating the changed requirements was issued and proposals were received from four offerors, including plaintiff and Evaluation Research Corporation (ERC). Each offeror's cost proposal was retained under lock and key by the procurement division, and the technical proposals were sent to a six member source selection evaluation board (SEB) to be reviewed under a previously designed set of evaluation criteria.

After a preliminary review of the technical proposals, the SEB notified each offeror of items needing clarification. ERC was asked to "[r]eview both direct labor and overhead" and to "[r]econsider total organization, manning, major work functions, 7 day week requirement and shift coverage." Plaintiff was asked to reconsider several items, but the SEB was satisfied that its proposal for staffing was perfectly adequate. Additional information was received from each offeror in response to the requests for clarification and in August the SEB concluded that plaintiff's technical proposal, awarded 743 points, was the best. The next highest score was ERC's at 704 points.

During the evaluation, several members of the SEB realized that the Caldwell listed as project manager in ERC's proposal was the same person who had previously been assigned to SHAD. According to the Chairman of the SEB, the Deputy Director, this did not raise any serious concern about a conflict of interest because Caldwell had retired three years earlier and had had no involvement with this request for proposals.

Upon receipt of final cost proposals, the procurement division applied the formula set out in the solicitation to arrive at a computed rate of cost per technical point awarded. Though plaintiff had received the most technical points, ERC's proposed cost resulted in a lower cost per technical point and it received the contract. This suit followed. *See Space Age Engineering, Inc. v. United States,* 2 Cl.Ct. 741 (1983).

Plaintiff claims entitlement to its bid preparation costs because Caldwell and current government employees violated a conflict of interest statute and regulations, procurement officials were biased in favor of the successful bidder, and the procurement was tainted by the appearance of impropriety. Defendant says the statute and regulations were not violated, plaintiff's bid was fairly and honestly considered, and the award of the contract was not otherwise wrongful.

## DISCUSSION

It is an implied condition of every request for proposals issued by the government that each responsive proposal submitted will be fairly and honestly considered. *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424 at 428 (1984); *Heyer Products Co. v. United States,* 140 F.Supp. 409, 412, 135 Ct.Cl. 63 (1956). If an unsuccessful bidder demonstrates this obligation has been breached, it may recover its bid preparation costs. *McCarty Corp. v. United States,* 499 F.2d 633, 637, 204 Ct.Cl. 768 (1979); *Keco Industries, Inc. v. United States,* 492 F.2d 1200, 1203–04, 203 Ct.Cl. 566 (1974). The standard of proof, however, is stringent. *Tidewater Management Services, Inc. v. United States,* 573 F.2d 65, 67, 216 Ct.Cl. 69 (1978); *Keco Industries, Inc. v. United States,* 492 F.2d at 1204. Recovery may be had only upon "clear and convincing proof" that award of the contract to another was arbitrary and capricious, thereby denying a contractor's bid the fair and impartial consideration to which it

was entitled. *Tidewater Management Services, Inc. v. United States,* 573 F.2d at 67; *Heyer Products Co. v. United States,* 140 F.Supp. at 414.

### Violation of Statute or Regulation

■ In this case, plaintiff argues that it is entitled to its bid preparation costs because of the violation of the Ethics in Government Act, implementing regulations, and Army procedures. This court cannot redress the violation of a statute or regulation which create no enforceable rights, *see United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1975); *Dynalectron Corp. v. United States,* 4 Cl.Ct. at 428, but a plaintiff may rely on the violation of a statute or regulation to show its implied contract for fair consideration has been breached. *Dynalectron Corp. v. United States,* 4 Cl.Ct. at 428; *see also Alabama Metal Products, Inc. v. United States,* 4 Cl.Ct. 530 at 534 (1984); *Electro-Methods, Inc. v. United States,* 3 Cl.Ct. 500, 508 (1983), *aff'd in part,* 728 F.2d 1471 at 1475 (Fed.Cir.1984).

Plaintiff contends that Caldwell's employment by ERC violated the Ethics in Government Act, 18 U.S.C. § 207 (Supp. V 1981), because he ran the CCP operation as a government employee and the procurement here is a "follow-on" or continuation of a contract he had worked on at SHAD. The Ethics in Government Act is a criminal statute which prohibits any former government employee from "knowingly act[ing] as agent ... for, or otherwise represent[ing], any other person ... in any formal or informal appearance before ... any department ... of the United States ... in connection with any ... contract ... or other particular matter involving a specific party or parties ... in which he participated personally and substantially as an officer or employee...." *Id.* § 207(a).

■ Plaintiff asserts that Caldwell's employment at SHAD forever forecloses any involvement on behalf of private industry before his former subordinates to procure a contract. But the Act only prohibits him from working on a "particular matter" in which he "participated personally and substantially." The implementing regulations provide that a "particular matter" involves a specific proceeding affecting the legal rights of the parties, rather than action of general application or the formulation of general policy, standards, or objectives, and that "substantial involvement" requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. 5 C.F.R. § 737.5(c)(1) and (d)(1).

Defendant has submitted a sworn statement that the disputed contract differed significantly from the earlier procurement. Even if it did not, Caldwell's only involvement with the first contract was as an administrator to see that scheduled deadlines were met for the A–76 review. He retired before the cost analysis, inhouse bid, or statement of work for the first contract was completed. Plaintiff disputes defendant's evidence, but has provided no supporting affidavits or other proof of its allegations that the contracts were similar or that Caldwell's involvement in the first procurement was extensive. Mere allegations are insufficient to raise a genuine issue of material fact. *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983).

The record shows that Caldwell's role in the A–76 review was limited to action of a general nature to ensure that others were moving promptly with their assignments. No proceedings affecting the legal rights of specific parties occurred until June of 1980, when bids were received on the solicitation issued in January of that year, almost a year after his retirement. Caldwell's tangential involvement, therefore, is not the "substantial participation" prohibited by the Act. Even if it was, there is no basis to conclude that the disputed contract is the "same matter" Caldwell was involved with at SHAD. Based on defendant's affidavit, Caldwell comes within Example 1 of 5 C.F.R. § 737.5(c)(4), which expressly permits a former government employee who was involved in the award of a contract to represent a private party in its proposal for

a follow-on contract when the proposed contract is significantly different.

The court need not dwell on plaintiff's contention that procurement officials violated Army Procurement Procedure §§ 1–650 to 1–652 by failing to report Caldwell's conduct to the Judge Advocate General. No violation of the Ethics in Government Act occurred and there is nothing in the record to indicate that any other allegations of criminal or fraudulent activities were brought to the attention of procurement officials. There was therefore nothing to report.

Plaintiff complains, however, that the procurement division sought a written legal opinion when plaintiff proposed hiring a SHAD employee as assistant site manager on the first contract, but did not do so in Caldwell's case. Defendant has submitted an affidavit from the Deputy Director that the members of the SEB did not seek an opinion on Caldwell because they knew that he had retired almost three years earlier and had had no involvement in this matter. Plaintiff's employee, on the other hand, sought to perform essentially the same services he had theretofore provided the government. The employee was ruled eligible to continue because it was concluded that his activities in the CCP operation did not bring him under the prohibitions of 18 U.S.C. § 207. The dissimilarities between these two situations justify the decision not to seek an advance ruling on Caldwell.

*Actual Bias*

Plaintiff also believes it is entitled to bid preparation costs because members of the SEB who had worked under Caldwell were prejudiced in favor of ERC and cites three instances of alleged favoritism. It says that (1) ERC received as many points for equipment maintenance as Space Age, even though Space Age offered to provide its own equipment and maintenance, and ERC did not; (2) ERC received points for handling hazardous materials and purchasing contractor furnished equipment even though it did not cover these activities in its proposal; and (3) ERC was told about problems with overstaffing in its proposal, but Space Age was not.

Plaintiff relies on statements from a 1983 pre-bid conference for a Bureau of Reclamation contract, completely unrelated to this procurement, to support its claimed entitlement to extra points for providing its own equipment and maintenance. These statements, however, concern cost comparisons made during an A–76 review to determine whether it would be cheaper for the government or a private contractor to perform a service. In our case, the decision to engage a private contractor was made two years earlier, and the request for proposals contained no provision for the award of credit or extra points to a bidder who used its own, rather than government furnished, equipment. Plaintiff was specifically informed by the contracting officer before the submission of final proposals that it would receive "no deduction or cost transfer" if it chose to replace government furnished property with its own. It acquiesced in that decision. The court, therefore, finds no bias in the number of points awarded to ERC for equipment maintenance.

Plaintiff's second alleged instance of favoritism involves the points awarded by the SEB for transition. It says the points awarded to ERC must have been based on the SEB's familiarity with Caldwell, an improper consideration, because ERC's initial proposal contained no provision for training hazardous material handlers or purchasing contractor furnished property. It offers no evidence to support this allegation. Defendant has come forward with an affidavit from the Chairman of the SEB saying that these areas were addressed by ERC to the satisfaction of the SEB. Because defendant has produced evidence establishing this fact, plaintiff may not rely on conjecture, but must set out specific facts showing a genuine dispute. *Campbell v. United States,* 2 Cl.Ct. at 249; RUSCC 56(e). It has not done so, and the court concludes that there was no bias in the award of transition points to ERC.

Plaintiff also claims bias when the SEB advised ERC of overstaffing problems with

its proposal, but not Space Age. Plaintiff does not say how it believes its proposal was overstaffed, only that if it had used the same number of personnel as ERC, it would have lowered its cost proposal and received the best overall evaluation. It adds that the additional personnel in its proposal represent a "smoking gun" because procurement officials were aware that their cost would represent the "margin of victory" for the winning contractor.

The SEB request for clarification does not contain the word "overstaffing" or any derivative of it. Rather, the SEB notice asks ERC to "[r]eview both direct labor and overhead" and to "[r]econsider total organization, manning, major work functions, 7 day week requirement and shift coverage." The Chairman of the SEB explained that ERC was asked to clarify the "adequacy" of its staffing because the SEB was concerned about the "low allocation of resources to the direct as opposed to the indirect labor area." On the other hand, it was satisfied that plaintiff's staffing was perfectly adequate.

· Procurement officials enjoy significant discretion in the evaluation of the relative merits of technical proposals and their determinations will not be disturbed unless shown to be arbitrary or without any rational basis. *See Big Bud Tractors Co. v. United States,* 2 Cl.Ct. 188, 193 (1983), *aff'd mem.,* 727 F.2d 1118 (Fed.Cir.1983); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983); *Keco Industries, Inc. v. United States,* 492 F.2d at 1203. Where a contracting officer is allowed to conduct oral or written discussions with offerors, as here, the burden of showing abuse of discretion is heavier than in formally advertised bidding. *See Burroughs Corp. v. United States,* 617 F.2d 590, 598, 223 Ct.Cl. 53 (1980); *see also Keco Industries, Inc. v. United States,* 492 F.2d at 1204.

Review of the record discloses no evidence that the members of the SEB who had prior professional contacts with Caldwell were biased in favor of him or his employer, ERC. Plaintiff's proposal received the highest number of points from the SEB. ERC received the contract only because its combined cost and technical score was better. The SEB was not given the bidders' cost information and, therefore, could not know the margin of victory for award or otherwise guarantee that ERC would receive the contract. The court finds no abuse of discretion by the SEB and concludes that there is no "smoking gun" proving that the SEB was biased in favor of ERC.

*Appearance of Impropriety*

■ Finally, plaintiff argues that even if there were no actual prejudice or violation of statute or regulation, it should recover because of the "appearance of impropriety" in this procurement. While this case was being briefed, the United States Court of Appeals for the Federal Circuit rejected appearance of impropriety as a basis for enjoining the award of a government procurement. *CACI, Inc.—Federal v. United States,* 719 F.2d 1567 (Fed.Cir.1983). Plaintiff admits that *CACI* now impedes its argument, but says it can be distinguished because the plaintiff in that case sought injunctive relief, rather than damages; the former government employee in that case had secured a letter advising there was no conflict of interest problem; and there was no "smoking gun," as here. The court has disposed of plaintiff's "smoking gun." The receipt of the advisory letter in *CACI* does not undermine the requirement that a disappointed bidder present "hard facts" if it is to receive relief, *see* 719 F.2d at 1582, either equitable or legal. *See Dynalectron Corp. v. United States,* 4 Cl.Ct. at 430–431.

Plaintiff would have the court infer that award of the contract to ERC must have resulted from the exertion of improper influence on procurement officials. Inferences cannot be substituted for the "clear and convincing proof" required. *Heyer Products Co. v. United States,* 140 F.Supp. at 414. One must present "well neigh-irrefragable proof" to overcome the presumption that government employees have acted conscientiously in the performance of their duties. *See Torncello v. United States,* 681 F.2d 756, 770 (Ct.Cl.1982); *Kalvar Corp. v.*

*United States,* 543 F.2d 1298, 1301–02, 211 Ct.Cl. 192 (1976). The court cannot award bid preparation costs on the basis of "suspicion or innuendo." *Dynalectron Corp. v. United States,* 4 Cl.Ct. at 430.

### CONCLUSION

Accordingly, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. The case will be dismissed with costs to the prevailing party. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).

It is so **ORDERED.**