**RADVA CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 63–89–C.**

United States Claims Court.

Aug. 9, 1989.

---

Michael H. Payne, Fort Washington, Pa., for plaintiff. Vincent O. Manuele and Timothy A. Sullivan, Fort Washington, Pa., of counsel.

Sheryl L. Floyd, with whom were Acting Asst. Attys. Gen. Stuart E. Schiffer, David M. Cohen and Helene M. Goldberg, Washington, D.C., for defendant. John Treanor, U.S. Army Corps of Engineers, of counsel.

## OPINION and ORDER

TURNER, Judge.

RADVA Corporation participated in negotiations with the Corps of Engineers on a design and construction project during a four-month period in 1988 before the Corps terminated negotiations and cancelled the solicitation. Plaintiff seeks reinstatement of the solicitation or, alternatively, bid preparation costs based on assertions that defendant's actions were arbitrary and capricious, constituted abuse of discretion, violated statutes and regulations, and breached its implied contract to fully and fairly consider plaintiff's proposal.

On April 17, 1989, defendant filed a motion for summary judgment which was argued on August 3, 1989. This opinion addresses defendant's motion.

For reasons stated below, it is concluded that the challenged conduct was not arbitrary and capricious, did not violate any statute or regulation, had a reasoned basis, and fell within the broad discretion accorded government contracting officials in a negotiated procurement. Accordingly, it is further concluded that defendant's motion should be granted.

I

In February 1988, the U.S. Army Corps of Engineers issued a Request for Proposals (RFP) to design and build 25 units of family housing at Fort A.P. Hill in Caroline County, Virginia. The Corps received two proposals under the solicitation but deemed only one of them—that submitted by RADVA—to be responsive.[1] Received on June 2, 1988, RADVA's proposal included a bond backed by individual sureties and offered to do the work described in the solicitation for $2,992,480.

Representatives from the Corps' Norfolk District Office began negotiations with representatives of RADVA in June 1988. These negotiations concerned, *inter alia,* revision of the design specifications and reduction in the cost of RADVA's original proposal since, as originally submitted, RADVA's proposed project cost had exceeded funds available to the Corps.

Continuation of the parties' discussions became uncertain, however, when, on June 27, the certifier of the individual sureties of the bonds provided by RADVA telephoned the Corps to repudiate his signature. App. to Def. Motion for Summary Judgment at 15. At this point, the Corps deliberated concerning the appropriate course of action. RADVA was unaware that these deliberations were taking place. An internal memorandum on this subject, dated July 1

---

1. The other proposal was not considered because it was submitted late. Thus, RADVA became the sole bidder precisely because its competitor had not acted in a timely manner as required by the solicitation.

and prepared by contracting officer representative Jack Beecher, stated:

At this time the Contracting Officer has two options. One, reject the proposal as non-responsible due to insufficient bonds. Two, delay the decision until the contractor submits the revised cost proposal on 15 July 1988. At that time if the revised cost is within range of negotiations, then in accordance with FAR 28.101–4(a), the Contracting Officer, in light of having received only one responsive proposal, may require substitute bonds prior to award.

Def. App. at 15. The contracting officer elected to resume negotiations and to give RADVA an opportunity to cure its defective bond. By letter dated July 24, 1988, the Corps informed RADVA that its original sureties were unacceptable and that a replacement proposal bond "must be submitted with supporting documentation ... by August 24, 1988." Def. App. at 23.

Major Richard F. Sliwoski was appointed as the contracting officer for this project in early August 1988, soon after his arrival at Norfolk District. Before coming to Norfolk District, Major Sliwoski had experience in another district as a contracting officer's representative but not as a contracting officer. Shortly after he assumed the post of contracting officer for this project, his commanding officer, Colonel Thomas, recommended that he grant RADVA additional time to obtain an acceptable proposal bond. By letter dated August 30, Major Sliwoski's office granted RADVA a second extension of its deadline for submission of a proposal bond, but warned: "Failure to submit an acceptable proposal bond by September 14, 1988 could cause your proposal to be found non-responsive." Def. App. at 24.

No further letters concerning extensions of time for submission of the proposal bond appear in the record. However, the court determined at an evidentiary hearing (conducted on August 3, 1989) that a September 19, 1988 telephone conversation between Major Sliwoski, the contracting officer, and Richard Frizzell, authorized representative of RADVA, addressed this subject. The court found that in this conversation,[2] Major Sliwoski expressed to Mr. Frizzell (1) that he was concerned over RADVA's failure to submit a bond and provide cost and pricing data, (2) that he was apprehensive about the possible loss of funding for the project, (3) that as a consequence, he (a) was establishing October 3, 1988 as the final deadline for submission of the cost and pricing data as well as the bond and (b) would soon commence action on a concurrent solicitation for the design portion of the project but would stop the concurrent action if RADVA supplied the items requested by October 3. Contracting officer representative Ken Coston was present in Major Sliwoski's office when the telephone conversation took place and memorialized its contents in a contemporaneous memorandum. Government Exhibit 2 at 8/3/89 evidentiary hearing; Def. Reply App. at 3.

Shortly after the September 19 telephone conversation, Major Sliwoski set in motion the contingency plan that he had described to Mr. Frizzell. In a communication to his superiors dated September 22, 1985, Major Sliwoski stated:

Norfolk District received one proposal in response to [the RFP for 25 units of family housing] on 2 June 1988 which exceeded funds available. I have attempted to negotiate an awardable project based on revisions to the proposal received. Substantial progress has been made but there remain several outstanding issues.... It appears prudent to begin concurrent action for an alternative method of procuring subject housing. Due to the small project size and the large number of different unit types required, we do not feel that another

---

2. The conversation was initiated by Mr. Frizzell because of his concern that RADVA would not be able to meet a September 20, 1988 deadline for submission of its cost and pricing data. The September 20 deadline had been established in the Corps' August 30, 1988 letter to Mr. Frizzell, which had also set a deadline of September 14, 1988 for submission of the bond. Def. App. at 24.

turn-key effort will generate the competition required to make this project successful. We recommend and request authority to commence concurrent actions to obtain A–E design services for subject project. We are continuing to seek resolutions to all outstanding issues in the hope that a contract award can be made to the current proposer.

Def. App. at 25. In a communication dated September 26, 1988, Major Sliwoski's request was approved. Def. App. at 26. RADVA was unaware of these internal communications at the time they occurred.

On October 3, Mr. Frizzell met with Messrs. Jack Beecher and Ken Coston, representatives of the contracting officer. Mr. Frizzell submitted RADVA's certified cost and pricing data but did not submit any bond documents. Instead, Mr. Frizzell supplied Mr. Beecher with the name of a *proposed* individual surety. Mr. Beecher checked the name against a list of suspended and debarred individual sureties. Not finding the name on the list, Mr. Beecher stated that he would refer the name to the Corps' legal department, but "strongly suggested" that RADVA obtain a corporate surety. Def. App. at 27. Mr. Frizzell stated that he would endeavor to submit a bond by the close of business that day, but he failed to do so.

The Corps then proceeded with its contingency plan for procuring the 25 family housing units. On October 6, 1988, the synopsis of a forthcoming solicitation for architect-engineering design services for the project was published in the *Commerce Business Daily*. Def. App. at 28. The synopsis directed all interested firms to respond within 30 days of publication. *Id.*

Then, by letter dated October 13, 1988,[3] Major Sliwoski stated to Richard Frizzell, RADVA's authorized representative:

[Y]our firm has been determined non-responsible on the subject RFP. The basis of this determination is your inability to submit acceptable proposal bonds within the allotted time frame.

Your interest in submitting a proposal is appreciated and your firm's name will be retained on the proposal mailing list for future invitations.

Def. App. at 29.[4] Mr. Frizzell received this letter on October 17, 1988. Def. App. at 31.

During this time, RADVA was performing another Corps of Engineers project (located within the Corps' Baltimore District) in Aberdeen, Maryland. Sometime prior to October 1988, Colonel B.E. Stalmann, Jr., District Commander of the Corps' Baltimore District, telephoned Colonel Thomas, Commander of the Norfolk District, for the purpose of expressing concern about RADVA's Baltimore District contract performance. Specifically, Colonel Stalmann related to Colonel Thomas that RADVA was not performing the Aberdeen project in a timely manner. Pl.Ex. 5 at 13.[5] Then, on October 7, 1988, the Baltimore District sent the following telex message to the counsel for the Norfolk District:

We are encountering performance problems [with RADVA] and are considering termination for default. Thus, there is a real possibility of the need for a setoff in the future. Therefore, please notify the undersigned of any current contracts with RADVA Corporation or any contract in which the RADVA Corporation is a major subcontractor.

---

3. Defendant maintains that although the letter was dated October 13, Major Sliwoski had actually requested its drafting approximately one week earlier. Moreover, defendant asserts that Major Sliwoski actually decided to terminate negotiations with RADVA as soon as he learned—sometime during the week of October 3—that RADVA had failed to present an adequate bid bond by October 3.

4. It is concluded that this letter terminated the Corps' negotiations with RADVA and also effec-

tively cancelled the solicitation, since RADVA was then the sole bidder.

5. Colonel Thomas stated in an affidavit that he could not recall whether Colonel Stalmann related unfavorable information about RADVA's performance during the phone conversation in question but asserted that, in any event, he did not relate any such unfavorable information to Major Sliwoski. Affidavit of Colonel Thomas ¶ 5 (Def. App. at 43).

Def. App. at 30, 45.[6]

On October 18, 1988, Mr. Frizzell contacted Mr. Beecher and informed him that RADVA had obtained a corporate bonding agent. RADVA submitted the bond documents to defendant on October 20, 1988. At this time, Major Sliwoski was out of the office. Upon his return in early November, he met with Mr. Frizzell but refused to resume contract negotiations.

The Corps proceeded with its alternative procurement plan and selected Town & Home, Inc. for negotiation of the design contract. In January 1989, Town & Home withdrew from further consideration and the Corps selected Washington Design Group, Ltd. Negotiations proceeded and on February 7, 1989 (the day after RADVA filed this action) the Corps awarded the design project to Washington Design Group. Washington Design Group had worked for RADVA during the latter's negotiations with the Corps under the original solicitation.

Following termination of its negotiations with the Corps, RADVA attempted to secure reversal of Major Sliwoski's decision through Corps of Engineers channels without success. Plaintiff filed this suit on February 6, 1989. In its complaint, plaintiff requests that the cancellation of the solicitation be set aside, that the solicitation be reinstated, and that its proposal be given full and fair consideration. Alternatively, RADVA seeks proposal preparation costs in excess of $40,000.

## II

In its motion for summary judgment, defendant urges that RADVA cannot carry the heavy burden which it must to prevail. Defendant asserts that the contracting officer dealt with RADVA in good faith and

did not violate any statute or regulation. Further, the government contends that the contracting officer had a rational basis for discontinuing negotiations with RADVA and for cancelling the solicitation. Finally, defendant argues that the factual issues RADVA contests are not material to resolution of this lawsuit.

In opposing defendant's motion, plaintiff urges that there exist genuine issues of material fact which require a trial on the merits.[7] Among the questions whose existence, plaintiff asserts, precludes summary disposition of this case is the issue whether the contracting officer was influenced by others in his decision to cancel the solicitation. Further, plaintiff disputes defendant's contentions concerning the legitimacy of the contracting officer's actions and argues that the government is not entitled to judgment as a matter of law.

## III

### A. *Jurisdiction*

This court and its predecessor, the Court of Claims, have long exercised jurisdiction over suits by disappointed bidders for alleged breach of an implied contract to consider bids fairly and honestly. *E.g., Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233 (1970) (*Keco I*); *Coastal Corp. v. United States*, 6 Cl.Ct. 337 (1984). Successful plaintiffs in these actions were once limited to recovery of bid preparation costs. *Morgan Business Assocs., Inc. v. United States*, 223 Ct.Cl. 325, 619 F.2d 892 (1980). In 1982, Congress enhanced this court's remedial powers with respect to such actions by enacting 28 U.S.C. § 1491(a)(3), which provides in pertinent part:

---

6. In an affidavit, Major Sliwoski stated (1) that he did not receive a copy of the telex message until early November 1988, (2) that he was not informed of any conversations concerning RADVA between Colonels Stalmann and Thomas until well after he had signed the October 13 letter and (3) that neither the telex message nor the Stalmann/Thomas conversation(s) played any part in his decision to terminate negotiations with RADVA. Affidavit of Major Sliwoski ¶ 8 (Def. App. at 45).

7. The court held an evidentiary hearing on August 3, 1989 in which the issues concerning the contents of the September 19, 1988 telephone conversation between Major Sliwoski and Mr. Frizzell were resolved in defendant's favor. The court's findings concerning that conversation are reflected in the statement of facts set forth in Part I of this opinion.

To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable relief as it deems proper, including but not limited to injunctive relief.

■ As noted above, this court's jurisdiction over RADVA's claim for proposal preparation costs has long been established; its jurisdiction over RADVA's prayer for reinstatement of the cancelled solicitation is also firmly, albeit more recently, established. The Federal Circuit has held that the equitable jurisdiction of this court includes the power to direct reinstatement of a solicitation, provided the suit requesting this remedy was filed prior to contract award. *National Forge Co. v. United States*, 779 F.2d 665, 667 (Fed.Cir.1985); *see also United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983) (the Claims Court's equitable powers under 28 U.S.C. § 1491(a)(3) "can be invoked only by filing a claim with the court before a contract is awarded"). Here, the solicitation whose reinstatement RADVA seeks entailed design and construction services for which no contract had been awarded as of the time RADVA filed this suit.[8] Although defendant *subsequently* made an award under a resolicitation for the design portion of the work, the cases indicate that no loss of plaintiff's right to seek equitable relief here should result, since that right must be judged as of the time suit was filed. *Id.; National Forge Co. v. United States*, 7 Cl.Ct. 741, 743 (1985) ("The fact that the United States might have made an award on the resolicitation will have no effect upon plaintiff's rights as they existed at the time suit was filed"). Accordingly, this court has jurisdiction over plaintiff's entire claim.

### B. *Standard of Review*

RADVA can secure exercise of this court's powers to grant complete relief here only by carrying a substantial burden of proof concerning the nature of the contracting officials' actions under an extremely limited standard of review of those actions. Review is limited because contracting officials "may properly exercise wide discretion in their evaluation of bids and in their application of procurement regulations." *CACI Field Services, Inc. v. United States*, 13 Cl.Ct. 718, 725 (1987), *aff'd*, 854 F.2d 464 (Fed.Cir.1988); *Electro-Methods, Inc. v. United States*, 7 Cl.Ct. 755, 762 (1985). Indeed,

> It is settled law that no assurance exists that a contractor will receive an award and that the Government retains, in its discretion, the right to reject all bids without liability, even after there have been extensive negotiations with a bidder.

*American General Leasing, Inc. v. United States*, 218 Ct.Cl. 367, 374, 587 F.2d 54, 58 (1978).

■ In order to secure reinstatement of the cancelled solicitation, RADVA must first demonstrate that it has standing to request such relief.[9] Then, RADVA must show, by clear and convincing evidence,[10] either (1) that government officials involved in the procurement process lacked a

---

**8.** As noted in Part I above, the government resolicited the design portion of the original solicitation but did not award the contract under the resolicitation until February 7, 1989—one day after this action was commenced.

**9.** Only those bidders who were "within the zone of active consideration" at the time a solicitation was cancelled have standing to challenge the cancellation. *See Morgan Business Assocs., Inc. v. United States*, 223 Ct.Cl. 325, 332, 619 F.2d 892, 896 (1980); *Vulcan Engineering Co. v. United States*, 16 Cl.Ct. 84, 88 (1988). Here, the court finds that the solicitation was effectively cancelled by Major Sliwoski's October 13, 1988 letter to Mr. Frizzell. *See* Note 4, *supra*. At that time (but not thereafter), RADVA was still within the zone of active consideration and thus has standing to challenge the cancellation. RADVA has urged that the solicitation was not cancelled until November 23, 1988. If the court were to adopt this position, it would have to find that RADVA lacks standing to challenge the cancellation.

**10.** The "clear and convincing evidence" burden applies because reinstatement of a cancelled solicitation is a form of injunctive relief. *Kinetic Structures Corp. v. United States*, 6 Cl.Ct. 387, 393 (1984), *quoting DeMat Air, Inc. v. United States*, 2 Cl.Ct. 197, 201 (1983).

rational or reasonable basis for their cancellation decision or (2) that the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations. *CACI Field Services, Inc.*, 13 Cl.Ct. at 725; *Aviation Enters., Inc. v. United States*, 8 Cl.Ct. 1, 15 (1985); *Kinetic Structures Corp. v. United States*, 6 Cl.Ct. 387, 394 (1984).

To determine whether RADVA has raised a triable issue concerning the lack of rational basis for defendant's actions, this court will consult the considerations set forth in *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974) (*Keco II*).[11] These considerations, which concern whether defendant's actions could be deemed "arbitrary and capricious" include: (1) That subjective bad faith on the part of procuring officials, depriving a bidder of fair consideration of its proposal, normally warrants recovery, but (2) that the degree of proof necessary for recovery is related to the amount of discretion entrusted to procurement officials. *Keco II*, 203 Ct.Cl. at 574, 492 F.2d at 1203-4.

With respect to "clear and prejudicial violation of applicable statutes and regulations," *DeMat Air, Inc. v. United States*, 2 Cl. Ct. 197, 202 (1983), plaintiff must do more than raise an issue concerning a violation of *any* law or regulation. The violation in question must be one that "denied [plaintiff] the impartial consideration to which it was entitled under the implied contractual obligations of the government." *CACI Field Services*, 13 Cl. Ct. at 726, *quoting Arrowhead Metals, Ltd. v. United States*, 8 Cl. Ct. 703, 714 (1985); *see also Keco II*, 203 Ct.Cl. at 574, 492 F.2d at 1204 ("proven violation of pertinent statutes or regulations [would] not necessarily be a ground for recovery").

Finally, in applying the above legal standards, it is significant "that the procurement in this case was conducted in the context of *negotiation* rather than by *for-mally advertised bidding.*" *Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 65, 617 F.2d 590, 598 (1980) (emphasis in original). In negotiated procurements, contracting officials possess "broad discretion in the process of obtaining the contract most beneficial to the government." *CACI Field Services*, 13 Cl. Ct. at 726; *Hayes Int'l Corp. v. United States*, 7 Cl.Ct. 681, 685 (1985); *see also Coastal Corp.*, 6 Cl. Ct. at 343. As the Court of Claims explained:

In formally advertised bidding the pertinent statutes and regulations are far more strict about the conduct of the procurement than [they are] in a negotiated one[;] consequently in negotiated procurement the contracting officer is entrusted with a relatively high degree of discretion.... Remarking on the contracting officer's discretion in negotiation the court in *Sperry Flight Systems Division v. United States*, 212 Ct. Cl. 329, 339, 548 F.2d 915, 921 (1977) noted that '... the decision to contract—a responsibility that rests with the contracting officer alone—is inherently a judgmental process which cannot accommodate itself to absolutes, at least not without severely impairing the quality of the judgment called for ...' and that, 'effective contracting demands broad discretion.' Because of the breadth of discretion given to the contracting officer in a negotiated procurement, the burden of showing this discretion was abused, and that the action was 'arbitrary and capricious' is certainly much heavier than it would be in a case of formal advertising.

*Burroughs Corp.*, 223 Ct.Cl. at 65, 617 F.2d at 598. In addition, the solicitation at issue here was for a "turnkey housing project" and the Court of Claims has explicitly held: "Contract award in a turnkey housing project inherently is a judgmental process that does not accommodate itself to absolutes." *Lincoln Services, Ltd. v. United States*, 230 Ct.Cl. 416, 427, 678 F.2d 157, 164 (1982).

---

**11.** We adopt defendant's position that the *Keco II* bid-preparation-cost criteria are "applicable *both* to determining whether bid preparation costs should be awarded and *also* to establishing whether the cancellation was proper." *Aviation Enters., Inc. v. United States*, 8 Cl.Ct. 1, 16 n. 21 (1985) (emphasis added).

With RADVA's high standard of proof and the limited scope of review of procurement officials' actions in mind, we now examine RADVA's allegations.

## IV

RADVA asserts that defendant's actions in terminating negotiations and cancelling the solicitation entitle it to relief because (1) pertinent regulation required the contracting officer to give RADVA up until the time of the award to secure adequate bonding, (2) the cut-off of negotiations was based on a finding that RADVA was non-responsible and pertinent statute and regulation required such a finding to be referred to the Small Business Administration, (3) award of the contract would have been permissible only with an audit requiring 75–80 days, so RADVA was entitled to at least this amount of time after submission of its cost and pricing data to secure its bond, and (4) because inadequate bonding was the only reason for termination of negotiations, RADVA's cure of this problem prior to the alleged formal cancellation of the solicitation entitled it to have its proposal considered.

## V

■ RADVA's arguments rest in part on misstatements of applicable law. The contention that 48 C.F.R. § 28.101–4(a) *required* the contracting officer to allow a bidder up until the time of award to secure adequate bonding finds support neither in the plain language of that provision nor in any case or Comptroller General opinion construing it. The provision states in pertinent part:

Noncompliance with a solicitation requirement for a bid guarantee requires rejection of the bid, except in the following situations when the non-compliance shall be waived, unless the contracting officer determines in writing that acceptance of the bid would be detrimental to the Government's interest:

(a) Only one bid is received. In this case, the contracting officer *may require the furnishing of the bid guarantee before award.*

48 C.F.R. § 28.101–4(a) (1987) (emphasis added). Plaintiff would have us read "may require the furnishing of the bid guarantee before award" in the passage just quoted as "may *not* require the furnishing of the bid guarantee before award." Plaintiff has cited no authority which warrants such a contortion of this language, nor has independent research uncovered any. In another context, the Supreme Court has recently rejected a similar attempt to transform the word "may" into the words "may not." *United States v. Monsanto,* —— U.S. ——, 109 S.Ct. 2657, 2665, 105 L.Ed.2d 512 (1989). Unquestionably, section 28.101–4(a) vested the contracting officer with authority to require adequate bonding before award.

■ Similarly, RADVA asserts that 48 C.F.R. § 15.805–5 rendered award of the contract permissible only following an audit of RADVA's cost and pricing data. Again, the provision in question gave the contracting officer *discretion* either to require an audit *or not:*

When cost or pricing data are required, contracting officers shall request a field pricing report (which *may* include an audit review by the cognizant contract audit activity) before negotiating any contract or modification resulting from a proposal in excess of $500,000, *except as otherwise authorized under agency procedures,* [and] *unless information available to the contracting officer is considered adequate to determine the reasonableness of the proposed cost or price.*

48 C.F.R. §. 15.805–5(a)(1) (1987) (emphasis added). Indeed, in the deposition of contracting officer representative Beecher (which RADVA cites for the proposition that pertinent regulation required an audit in this case), the following exchange occurs: "Q. And was there a possibility that the audit could have been waived as well? A. It's a possibility, yes." Pl.Ex. 7 at 4. It is concluded that pertinent regulation did not require the contracting officer to obtain an audit of RADVA's cost and pricing data prior to award.

■ Nor can RADVA escape summary judgment based on its allegation that the manner in which defendant cancelled the solicitation violated 48 C.F.R. § 15.608(b). That provision permits all proposals received in response to a solicitation to be rejected if "the agency head" makes one or more specified determinations "in writing." *Id.* Plaintiff asserts that none of the specified determinations was ever set out in writing and that, in any event, no action by the agency head appears in the record.

Even assuming that section 15.608(b) applies and was violated, it would still furnish plaintiff no ground for recovery here. As noted above, not every proven violation of pertinent regulation warrants recovery; indeed, "[u]nless plaintiff can show that violation of the regulation [in question] is a factor relevant to a determination that a breach of the contractual obligation of fair consideration occurred, it cannot [obtain equitable relief]." *Dynalectron Corp. v. United States*, 4 Cl.Ct. 424, 429, *aff'd*, 758 F.2d 665 (Fed.Cir.1984). On these facts, plaintiff could not show that violation of section 15.608(b) in any sense deprived it of fair consideration; the absence (assuming there was one) of a written determination by the agency head does not change the fact, discussed below, that a reasoned basis appears in the record for the action taken. Neither could this provision's violation entitle plaintiff to recovery of bid preparation costs, since "regulation[s] like this one ... [do] not embrace the right to compensation." *Dynalectron Corp.*, 4 Cl.Ct. at 428.

■ Nor has RADVA raised a triable issue concerning referral of the alleged finding of non-responsibility to the SBA. Plaintiff urges that Major Sliwoski's October 13 letter was actually a finding that RADVA was non-responsible in the Small Business Act sense of that term. While this contention finds support in the language of the letter's first paragraph ("your *firm* has been determined non-responsible on the subject RFP [emphasis added]"), and while this court must view the "inferences to be drawn from the underlying facts ... in the light most favorable to the [non-moving] party" in a summary judgment motion, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), we are not at liberty to ignore other uncontroverted facts contained in the record.[12] Those other facts persuade that despite its language, the October 13 letter was a finding that RADVA's *proposal bond* was non-responsible, not that RADVA itself was non-responsible.

First, the internal Corps of Engineers memorandum prepared after RADVA's bond problem first arose presented the option of "reject[ing] the *proposal* as non-responsible due to insufficient bonds." Def. App. at 15 (emphasis added). Second, in its August 30 letter to RADVA, Major Sliwoski's office warned: "Failure to submit an acceptable proposal bond by September 14, 1988 could cause your *proposal* to be found non-responsive." Def. App. at 24 (emphasis added). Third, the very October 13, 1988 letter which terminated negotiations explained: "The basis of this determination is your inability to submit acceptable *proposal bonds* within the allotted time frame." Def. App. at 29 (emphasis added). Finally, in its original complaint, *RADVA itself* stated: "By letter dated October 13, 1988, Defendant informed RADVA that its *proposal* was considered non-responsible." Complaint ¶ 14 (emphasis added).

Further, defendant has cited numerous Comptroller General decisions[13] holding that a non-responsibility determination

12. RUSCC 56(d)(3) provides in pertinent part:

In determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are included in the Statement of Genuine Issues and are controverted by affidavit or other written or oral evidence.

13. Comptroller General decisions are not binding on the Claims Court. *National Forge Co. v. United States*, 779 F.2d 665, 668 (Fed.Cir.1985); *Burroughs Corp. v. United States*, 223 Ct.Cl. 53, 63, 617 F.2d 590, 597 (1980). Nevertheless, such decisions, "when reasonable and persuasive, have been used by the court for general guidance." *CACI Field Services, Inc. v. United States*, 13 Cl.Ct. 718, 731 n. 28 (1987), *aff'd*, 854 F.2d 464 (Fed.Cir.1988) (citations omitted).

based on inadequacy of bid bonds does not have to be referred to the Small Business Administration, even if, as here, the bidder is a small business. *E.g., Professional Coatings*, 1987–1 C.P.D. ¶ 244; *American Federal Contractor, Inc.*, 1986–2 C.P.D. ¶ 114; *Consolidated Marketing Network, Inc.*, 1985–1 C.P.D. ¶ 675; *Ken Baughman*, 1984–2 C.P.D. ¶ 699; *Clear Thru Maintenance, Inc.*, 1982–1 C.P.D. ¶ 581. Moreover, the facts in the record make clear that when Major Sliwoski cited RADVA's "inability to submit acceptable proposal bonds within the allotted time frame," (Def. App. at 29), the Major was not saying RADVA "could not get [a bond], but [merely] that they had not produced one." Def. Reply App. at 35. Finally, the second paragraph of the October 13 letter is inconsistent with RADVA's assertion that the letter constituted the kind of non-responsibility finding that had to be referred to SBA. If Major Sliwoski were indeed finding RADVA non-responsible in the Small Business Act sense, i.e., lacking the "capability, competency, capacity, credit, integrity, perseverance, and tenacity" to perform the design and construction project, 15 U.S.C. § 637(b)(7)(A), it would not have made sense for him to have encouraged RADVA to bid on other Corps projects in the future.

■ Nor is RADVA correct in its assertion that the failure to provide bonds was the only reason for termination of negotiations. The record establishes that Major Sliwoski was also concerned with the loss of project funding, and reasonably believed that if the Corps were to use an alternative means of procuring the housing, such means would take approximately one year. Moreover, the major was dissatisfied with the number of offers received under the original solicitation. In Major Sliwoski's view, a resolicitation carried the possibility of "generat[ing] the competition required to make th[e] project successful." Def. App. at 25.[14] Given the heightened level of discretion enjoyed by contracting officers in a negotiated procurement, Major Sliwoski necessarily possessed power to make these determinations and proceed accordingly. We cannot say that his actions lacked a rational basis.

RADVA could survive the government's motion for summary judgment only if (1) RADVA's own conduct were overlooked, and (2) the level of discretion afforded contracting officers in negotiated procurements were not fully appreciated.

RADVA attempts to explain its failure to provide adequate proposal bonds within the time extensions provided by defendant as attributable to its being preoccupied with (1) negotiations on price and scope of work and (2) the preparation of acceptable cost and pricing data. Even assuming, as RADVA implies, that RADVA could not be fairly expected to do more than a few things at once, it is apparent from the record that RADVA did not take seriously defendant's bond deadlines.

Perhaps this was based on an erroneous view of the Corps' prerogatives with respect to the proposal bond. As noted above, however, the contracting officer had the authority to require submission of the bond prior to award. 48 C.F.R. § 28.101–4(a). Indeed, if one contrasts what the contracting officer could have done here with what he actually did, it becomes apparent that RADVA was treated with abundant forbearance. For example, the Corps could have rejected RADVA's proposal as non-responsible based on inadequate bonds as early as July 24. It could have done so again when RADVA failed to meet or even request an extension of the September 14 deadline. In fact, the Corps could have, at any time, cancelled the solicitation altogether upon a determination that doing so was in the best interest of the government. *See American General Leasing, Inc.*, 218 Ct.Cl. at 374, 587 F.2d at 58; 48 C.F.R. § 15.608(b)(4) (1987). Instead, the Corps continued to

---

**14.** During oral argument, plaintiff contended that if the contracting officer's cutoff of negotiations were based on his dissatisfaction with the low number of proposals received, it was unreasonable for him to have waited four months to take action. As noted in text, however, this was not the sole reason for the cutoff of negotiations. Instead, it was at most a subsidiary reason.

negotiate with RADVA until (1) RADVA's failure to meet deadlines, (2) the contracting officer's concern about loss of project funding, and (3) his reasonable belief that obtaining the 25 family housing units in another manner would take approximately one year resulted in termination of negotiations and cancellation of the solicitation.

■ With respect to Major Sliwoski's refusal to resume negotiations after RADVA obtained a corporate surety, we cannot say the Major's actions lacked a rational basis. By the time it was brought to Major Sliwoski's attention that RADVA had obtained a corporate surety, the resolicitation had already been issued. As noted above, Major Sliwoski determined that proceeding under a resolicitation would be more advantageous to the government and his treatment of RADVA during the parties' negotiations under the RFP had been fair. Again, although Major Sliwoski could have given RADVA another chance, he was not *required* to and there was a reasonable basis for his election.

■ Nor does RADVA raise a triable issue in asserting that because of his relative inexperience as a contracting officer, Major Sliwoski's failure to obtain legal counsel concerning his actions constituted abuse of discretion. On these facts, the failure to seek counsel constituted, at most, harmless error. As outlined above, Major Sliwoski's actions did not violate pertinent statutes or regulations, were undertaken in good faith and had a reasonable basis.

■ Neither can plaintiff avoid summary disposition of its claims by alleging that "the contracting officer in the instant case did nothing to further the government's interest in awarding contracts to small businesses." Pl. Opp. at 31. The record resoundingly refutes this contention. The contracting officer extended deadlines on several occasions and in general gave RADVA far more consideration and forbearance than the law required.

■ Finally, RADVA alleges that negative communications concerning its performance of a Corps of Engineers project in Aberdeen, Maryland may have influenced Major Sliwoski's actions on the subject RFP. RADVA has had the opportunity to depose all three officers involved and has failed to raise a triable issue concerning this alleged undue influence. But even assuming that Major Sliwoski considered the negative communications prior to his termination of negotiations with RADVA, such consideration would constitute harmless error, as there otherwise existed a rational basis for his actions.

## VI

For the reasons stated, defendant's motion for summary judgment is GRANTED. Judgment for defendant shall be entered accordingly.